**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

BARBARA ANN KELLY,                    *

      Appellant,                         *

v.                                    *        Civ. No. DLB-24-184

NAPLES PROPERTY HOLDING              *
    COMPANY, LLC, *et al.*
                                      *
      Appellees.                        *

                                      *

**MEMORANDUM OPINION**

Barbara Ann Kelly appeals an order of the U.S. Bankruptcy Court for the District of Maryland that granted Kelly's creditors' motion to dismiss her Chapter 13 petition with prejudice, imposed a four-year refiling bar, prevented the application of the automatic stay under 11 U.S.C. § 362(a) to any property in which Kelly has an ownership or possessory interest, and imposed an equitable servitude on her properties for four years. Kelly argues that the bankruptcy court erred when it granted the creditors' motion to dismiss and denied her voluntary dismissal motion and that the court abused its discretion when it imposed the refiling bar and granted prospective relief to her creditors.

Upon review of the parties' briefs, ECF 18, 21, & 29,[1] and the record, ECF 4, 5, & 24, the Court finds a hearing on the merits unnecessary. *See* Fed. R. Bankr. P. 8019; Loc. R. 105.6. For the following reasons, the Court affirms the bankruptcy court's order.

---

[1] Kelly filed her reply brief out of time. She filed two motions for enlargement of time, ECF 27 & 28, and a motion to accept her reply brief as timely filed, ECF 30. The Court grants all three motions and considers Kelly's reply brief as if it were timely filed.

## I.    Factual and Procedural Background

Kelly and her husband, Gregory Brian Myers, are repeat bankruptcy filers. Since at least 2009, Kelly and Myers have been trying to avoid foreclosure on their multi-million-dollar homes in Bethesda, Maryland (the "Bethesda Property") and Naples, Florida (the "Naples Property"). Myers has filed for bankruptcy four times—twice in this district, once in Florida, and once in Delaware. Kelly has filed for bankruptcy five times—once in Florida and four times in this district, including this case. Myers is not a debtor in this case, but his bankruptcy cases implicate the properties at issue here and in Kelly's other bankruptcy cases. Myers's conduct also is relevant because the bankruptcy court found that Myers and Kelly have been working in concert throughout the bankruptcy process and because Myers asserted himself as a party-in-interest and participated in the bankruptcy court proceedings below. A summary of Myers's and Kelly's long and sordid history of bankruptcy filings provides necessary context for this appeal.

### A.  Myers's Petitions

Myers filed his first petition, *In re Myers*, No. 15-26033-MCR (Bankr. D. Md. Nov. 18, 2015) (the "First Myers Case"), on November 18, 2015, the day before a scheduled foreclosure sale, *see In re Kelly*, 656 B.R. 541, 599 (Bankr. D. Md. 2023).[2] He filed a Chapter 11 petition in this district. *See id.* at 552. That filing triggered the automatic stay provision, 11 U.S.C. § 362(a), so the foreclosure sale was canceled. In 2017, the bankruptcy court granted the U.S. Trustee's motion to convert the case to Chapter 7, *id.*, where the goal is liquidation of non-exempt assets, instead of the reorganization that occurs under Chapter 11. The Trustee argued that Myers did not comply with the bankruptcy court's order to propose a disclosure statement reasonably susceptible

---

[2] Kelly does not challenge the bankruptcy court's presentation of the factual history. Where relevant, the Court adopts the bankruptcy court's description of the underlying facts. It also takes judicial notice of Myers's and Kelly's other bankruptcy cases and related litigation.

to approval or a confirmable plan. *Id.* It also argued that Myers "had grossly mismanaged the bankruptcy estate as the result of a direct conflict of interest, and there had been substantial or continuing loss to or diminution of the estate with no reasonable likelihood of rehabilitation." *Id.* The bankruptcy court agreed and converted the case, "at least in part because Myers had failed to disclose assets that would have been relevant to the payment of Myers' creditors." *See Myers v. McNamee, Hosea, Jernigan, Kim, Greenan, & Lynch, P.A.*, No. PX-18-3460, 2020 WL 758151, at *1 (D. Md. Feb. 14, 2020).

Myers continues to litigate the First Myers Case nearly a decade later. *In re Kelly*, 656 B.R. at 552. Kelly has been an "active participant" in the First Myers Case. *Id.* She and Myers have filed "countless motions, oppositions, and appeals and commenced eight adversary proceedings in connection with the case." *Id*. Almost none of those filings have been meritorious. *Id.* Indeed, "the lion's share of [Myers's filings] have been dismissed or denied on procedural grounds." *Myers*, 2020 WL 758151, at *3. The bankruptcy court denied Myers's request to discharge his debt in the First Myers Case. Myers noted an appeal on February 27, 2019. *Myers v. U.S. Tr.*, No. PX-19-637, 2020 WL 758157, at *1 (D. Md. Feb. 13, 2020).

The same day that Myers noted his appeal, he filed a Chapter 13 petition in the U.S. Bankruptcy Court for the District of Delaware. *In re Myers*, No. 19-10392-BLS (Bankr. D. Del. Feb. 27, 2019) (the "Second Myers Case"). Chapter 13 allows an individual with regular income but substantial debt to propose a payment plan to the court, with a trustee handling the payments. Myers's Chapter 13 petition triggered the automatic stay provision, 11 U.S.C. § 362(a). *See Myers*, 2020 WL 758157, at *1. The timing of the filing was not fortuitous; there was a foreclosure sale of the Naples Property scheduled for the next day, which was canceled due to the stay. *See In re Kelly*, 656 B.R. at 599. The Delaware bankruptcy court granted the Trustee relief from the

automatic stay. *See Myers*, 2020 WL 758157, at *1. It dismissed the Second Myers Case on March 28, 2019 for improper venue. *See In re Kelly*, 656 B.R. at 552.

Two months later, on Friday, May 31, 2019, Myers filed another Chapter 13 petition, this time in this district. *In re Myers*, No. 19-17428-LSS (Bankr. D. Md. May 31, 2019) (the "Third Myers Case"). That case also triggered the automatic stay. *See Myers*, 2020 WL 758157, at *1. There was a foreclosure sale of the Naples Property scheduled for Monday, June 3, the next weekday, which did not go forward due to the stay. *In re Kelly*, 656 B.R. at 599. The bankruptcy court granted the Trustee relief from the automatic stay and denied Myers's motion to stay its ruling pending appeal. *See Myers*, 2020 WL 758157, at *2. Myers moved to voluntarily dismiss the Third Myers Case, which the bankruptcy court granted on September 9, 2019. *See In re Kelly*, 656 B.R. at 552.

Myers filed another Chapter 13 petition on January 28, 2021, this time in the U.S. Bankruptcy Court for the Middle District of Florida (the "Fourth Myers Case"). *In re Myers*, No. 21-00123-FMB (Bankr. M.D. Fla. Jan. 28, 2021). On February 1, 2023, the bankruptcy court dismissed the Fourth Myers Case with prejudice. *See In re Kelly*, 656 B.R. at 553. It found that Myers did not file the petition or his plan in good faith. *See id.* Instead, it found that Myers's "motivation in th[e] case [wa]s to delay and frustrate the many parties with whom he [wa]s engaged in contentious litigation, some of whom over the course of the last decade." *See id.* (quoting Fourth Myers Case, ECF 368, at 12–13). Based on Myers's repeated filings, the bankruptcy court imposed a two-year refiling bar. *Id.* That bar prohibited Myers from filing another bankruptcy case "anywhere in the world" before January 19, 2025. *Id.* (quoting Fourth Myers Case, ECF 380, at 1).

Myers appealed the dismissal order. *Id.* The District Court for the Middle District of Florida dismissed Myers's appeal for failure to prosecute. *Id.* Myers appealed that dismissal order to the United States Court of Appeals for the Eleventh Circuit, which also dismissed his appeal for failure to prosecute. *Id.*

**B. Kelly's Prior Petitions**

Like her husband, Kelly has been busy in the bankruptcy courts.

Kelly filed her first bankruptcy case, a Chapter 13 petition, on March 13, 2018, in this district. *See In re Kelly*, No. 18-13244-WIL (Bankr. D. Md. Mar. 13, 2018) (the "First Kelly Case"). Kelly filed her petition one day after a Maryland state court denied her request to stay the foreclosure of the Bethesda Property. *See In re Kelly*, 656 B.R. at 599. Once she filed the First Kelly Case, the automatic stay prevented the foreclosure from taking place.

After receiving several extensions, Kelly filed her bankruptcy schedules. *See In re Kelly*, No. 18-13244-WIL, 2018 WL 4354653, at *1 (Bankr. D. Md. Sept. 11, 2018). Her schedules indicated that she had no secured creditors and had unsecured claims totaling $297,021.00. *Id.* at *1–2. Several of Kelly's creditors filed proofs of claims that contradicted the information in her schedules. *Id.* at *2. The creditors asserted secured claims against Kelly's properties totaling $6,204,504.52 and unsecured claims totaling $1,057,037.89. *Id.* Based on the proofs of claims, the Chapter 13 Trustee moved to dismiss the First Kelly Case. *Id.* The Trustee argued that Kelly did not qualify as a Chapter 13 debtor because her debts exceeded the Chapter 13 jurisdictional limits. *Id.*

The bankruptcy court agreed and dismissed her case on July 13, 2018. *Id.* at *1. Kelly noted an appeal. *See Kelly v. Grigsby*, No. PX-18-2345, 2019 WL 13472371, at *1 (D. Md. Feb. 26, 2019). Kelly and Myers also filed motions to reconsider, both of which the bankruptcy court

denied. *In re Kelly*, 2018 WL 4354653, at *1. In its September 11, 2018 opinion denying the motions, the bankruptcy court found that Kelly did not use reasonable diligence in completing her schedules. *Id.* at *5. It also explained why Kelly exceeded the Chapter 13 jurisdictional limits and why she was not qualified to be a Chapter 13 debtor. *Id.* at *6–7. The bankruptcy court determined that one of Kelly's creditors, U.S. Bank, held a liquidated, noncontingent claim in the amount of $3,219,793.50 secured by the Naples Property, which was greater than the Chapter 13 jurisdictional limit of $1,184,200.00 for liquidated, noncontingent secured debts. *Id.* at *7 (citing 11 U.S.C. § 109(e)). Similarly, the bankruptcy court determined that another of Kelly's creditors, Seaside Community Development Corp., held a liquidated, noncontingent unsecured claim in the amount of $611,543.30, which was greater than the Chapter 13 jurisdictional limit of $394,725.00 for unsecured debts. *Id.* The court also noted that U.S. Bank's claim was secured only up to the value of the Naples Property, which Kelly scheduled as being $2,575,908.00, so the unsecured portion of that claim also exceeded the jurisdictional limit for unsecured debts. *Id.* Kelly clearly exceeded the Chapter 13 debt limits. *See id.* at *4.

While Kelly's and Myers's motions to reconsider were pending, a Maryland state court entered an order permitting the foreclosure sale of the Bethesda Property to proceed. *See In re Kelly*, 656 B.R. at 599. Nine days later, Kelly filed a second Chapter 13 petition in the bankruptcy court for the Middle District of Florida. *See In re Kelly*, No. 18-07142-FMD (Bankr. M.D. Fla. Aug. 24, 2018) (the "Second Kelly Case"). Again, the petition stopped the foreclosure sale. On Kelly's request, the bankruptcy court dismissed the Second Kelly Case on September 10, 2018, less than a month after it was filed. *See In re Kelly*, 656 B.R. at 554.

In the meantime, a foreclosure sale of the Naples Property was scheduled for February 28, 2019. *See Kelly*, 2019 WL 134723371, at *1. Myers had filed the Second Myers Case in Delaware

the day before, which prevented the sale. Kelly also tried to stop the sale by filing an emergency motion in the bankruptcy court to stay the dismissal of the First Kelly Case pending appeal "with the express purpose of halting the foreclosure sale." *Id.* The bankruptcy court denied the motion, reiterated that "Kelly was ineligible for Chapter 13 because her debts exceeded the statutory limits," and found that the motion was "nothing more than a veiled attempt to seek injunctive relief against U.S. Bank to stop the pending foreclosure." *Id.* (quoting First Kelly Case, ECF 116, at 3–4). Kelly filed another stay motion in the district court, which the court denied, reasoning that "[t]he tortured history of th[e] case militate[d] against any further delay." *Id.* at *2.

Undeterred, Kelly filed her third Chapter 13 petition in this district on October 30, 2019. *In re Kelly*, No. 19-24525-LSS (Bankr. D. Md. Oct. 30, 2019) (the "Third Kelly Case"). A foreclosure sale of the Naples Property was scheduled to occur the next day but did not due to the automatic stay. *See In re Kelly*, 656 B.R. at 599. As in her first case, Kelly's schedules in this case also reflected that she had no secured debt. *Id.* at 554. The bankruptcy court ordered Kelly to show cause why the case should not be dismissed because of Kelly's ineligibility for Chapter 13 bankruptcy. *Id.* Instead of responding, Kelly moved to voluntarily dismiss her petition. *Id.* The bankruptcy court granted Kelly's motion to dismiss with prejudice pursuant to 11 U.S.C. § 109(g)(2), barring her from refiling another bankruptcy petition for 180 days. *Id.* at 554–55.

Kelly filed her fourth case in this district on March 8, 2023, this time under Chapter 11. *See In re Kelly*, No. 23-11566-LSS (Bankr. D. Md. Mar. 8, 2023) (the "Fourth Kelly Case"). Once again, a foreclosure sale of the Naples Property was scheduled to occur the next day but did not due to the automatic stay. *See In re Kelly*, 656 B.R. at 599. The bankruptcy court dismissed her case two days after she filed it, because Kelly failed to comply with a local rule requiring her to file a list of her 20 largest unsecured creditors. *Id.* at 555. Instead of curing that deficiency, Kelly

filed three motions to reconsider. *Id.* Kelly then filed an appeal in the district court. *Id.* The district court dismissed the appeal because Kelly failed to file a designation of items to be included in the appellate record and a statement of issues to be presented on appeal as required by Bankruptcy Rule 8009. *Id.*

That brings us to the current case.

### C.  The Current Kelly Case

On April 19, 2023, Kelly commenced her current case by filing a Chapter 13 petition. *In re Kelly*, No. 23-12700-MCR (Bankr. D. Md. Apr. 19, 2023). Once again, an automatic stay went into effect. Kelly filed her creditor matrix with the petition, but she did not file any other required documents. *See In re Kelly*, 656 B.R. at 555. The bankruptcy court instructed Kelly to file the missing documents and scheduled a meeting of creditors. *Id.* at 555–56.

After receiving one extension, Kelly filed her bankruptcy schedules in which she detailed, under penalty of perjury, her assets, liabilities, income, and expenses. *Id.* at 556. Kelly identified an ownership interest in five parcels of real property: a single-family home in Naples, Florida (the Naples Property); a single-family home in Bethesda, Maryland (the Bethesda Property); and three properties in Santa Rosa Beach, Florida. *Id.* Kelly stated that she and Myers owned all five properties as tenants by the entireties. *Id.* Kelly claimed her liabilities included $0.00 in secured claims, as none of her creditors has any valid secured claim against any of the five properties. *Id.* at 557–58. She also stated that she had no priority unsecured creditors and 47 general unsecured creditors. *Id.* at 558. Of those 47 general unsecured creditors, Kelly listed all but six as having a claim in the amount of $1.00. *Id.* at 558–59.

Kelly also filed a Chapter 13 plan. Her plan proposed to pay $150.00 per month for 36 months, for a total of $5,400.00. *Id.* at 559. Two creditors filed objections to Kelly's plan. U.S.

Bank's objection stated that the bank had a claim against Kelly secured by a trust on the Bethesda Property with prepetition arrears of approximately $1,317,814.32. *Id.* Specialized Loan Servicing, LLC also objected. *Id.* It stated that it had a claim against Kelly secured by a trust on the Naples Property with a loan balance of approximately $3,512,802.64. *Id.*

Kelly then asked to continue her meeting of creditors because necessary documents were missing. *Id.* at 559–60. The meeting was rescheduled. *Id.* at 560. The Chapter 13 Trustee then reported that the rescheduled meeting did not take place because the missing documents were never produced. *Id.* at 560. The meeting of creditors was not rescheduled and never happened. *Id.* The Chapter 13 Trustee filed a notice of noncompliance, informing the bankruptcy court that Kelly had failed to provide the Trustee with a copy of pay stubs and her federal income tax return. *Id.*

### D. Creditors' Motions

In the meantime, two of Kelly's creditors (the "Creditors") filed motions to lift the automatic stay that took effect when Kelly filed her Chapter 13 petition. One creditor also moved to dismiss Kelly's petition.

The first lift stay motion was filed by Naples Property Holding Company, LLC; Naples Beach Club Land Trust Trustee, LLC, as Trustee; Naples Beach Club Phase II and III Land Trust Trustee, LLC, as Trustee; and NBC Club Owner, LLC (collectively, the "NBC Entities"). *See In re Kelly*, 656 B.R. at 562. The NBC Entities had been entangled in litigation with Myers for several years. *Id.* In 2021, Myers filed a complaint against the NBC Entities in Florida state court (the "Naples Litigation"). *Id.* Kelly later joined the suit. *Id.* Myers and Kelly claimed a private implied easement appurtenant to the Naples Property and use restrictions over portions of the NBC Entities' property, a hotel and golf course (the "NBC Property"). *Id.* The Florida court rejected Kelly and Myers's claims, enjoined them from claiming any interests in the NBC Property, and

awarded costs to the NBC Entities. *Id.* Kelly and Myers appealed that judgment. *Id.* They then removed the appeal to the U.S. District Court for the Middle District of Florida, which remanded the appeal back to state court. *Id.*

In their lift stay motion, the NBC Entities claimed that the "pending appeals continue[d] to cloud title to the NBC Property and the cost award[ed] to the NBC Entities remains unliquidated." *Id.* at 562–63. They requested relief from the automatic stay pursuant to 11 U.S.C. § 362(d) so they could continue to resolve the Naples Litigation and liquidate their award for costs against Kelly and Myers. *Id.* at 563. They also sought prospective relief from the automatic stay for a period of two years to allow them to continue the Naples Litigation and pursue their cost award if Kelly ever filed for bankruptcy in the future. *Id.*

The NBC Entities also filed a motion to dismiss Kelly's bankruptcy petition. *Id.* at 565. They argued that Kelly was not eligible to be a Chapter 13 debtor and that she brought her petition in bad faith. *Id.* They also sought an order barring Kelly "from refiling any new bankruptcy case for a period to run co-terminus with the pending two-year bar against Myers' access to bankruptcy relief." ECF 5-12, at 2.

The NBC Entities self-scheduled a hearing on their lift stay motion for June 8, 2023. *In re Kelly*, 656 B.R. at 563. On June 1, the bankruptcy court rescheduled the hearing for June 13. *Id.* It ordered a combined hearing on the NBC Entities' lift stay motion and motion to dismiss. *Id.* In its order rescheduling the hearing, the bankruptcy court noted that it would consider the NBC Entities' requested relief (the refiling bar and prospective relief from the automatic stay) and whether it should "impose an equitable servitude with respect to any real property owned and/or occupied by the Debtor for a period up to two (2) years based on the Debtor's history of bankruptcy filings pursuant to 11 U.S.C. §§ 105(a) and 362(d)(4)." ECF 4-13, at 3.

On June 9, Myers filed motions to dismiss the NBC Entities' motion to lift the stay and motion to dismiss. ECF 5-20 & 5-21. On June 12, Kelly filed a "preliminary" opposition to the lift stay motion. *In re Kelly*, 656 B.R. at 563; *see* ECF 4-19. Kelly did not appear at the June 13 hearing. *In re Kelly*, 656 B.R. at 563. Instead, Myers appeared at the hearing and requested a 21-day continuance. *Id.* Myers stated that Kelly had a medical emergency and that he and Kelly wished to retain counsel. *Id.* at 563–64. The bankruptcy court continued the hearing to July 10. *Id.* at 564.

Meanwhile, on June 29, U.S. Bank filed its own lift stay motion. *Id.* at 565; *see* ECF 5-25. U.S. Bank had a long history with Kelly. Back in 2007, Kelly executed an Adjustable Rate Note and a Deed of Trust with Washington Mutual Bank, FA, granting the holder of the Note a lien on the Bethesda Property securing repayment of the loan. *In re Kelly*, 656 B.R. at 564. The Deed of Trust was later assigned to U.S. Bank. *Id.* As of June 23, 2023, the total due under the Note was $2,698,674.36. *Id.* U.S. Bank began foreclosure proceedings in Maryland state court in 2014. *Id.* Though the proceedings began in 2014, U.S. Bank has not been able to complete a sale of the Bethesda Property because of Kelly's and Myers's myriad litigation tactics, including their repeated bankruptcy filings and the attendant automatic stays. *Id.* U.S. Bank's lift stay motion requested relief from the automatic stay to allow it to foreclose on the Bethesda Property, relief from the co-debtor stay, and imposition of an equitable servitude with respect to the Bethesda Property for a period of two years. *Id.*

The deadline by which non-governmental creditors were required to file proofs of claim was June 28, 2023, and the deadline for governmental creditors was October 16. *Id.* at 560. Fourteen proofs of claims were timely filed. *Id.* U.S. Bank filed a proof of secured claim for

$2,698,674.36, the total due under the Note. *Id.* at 561. Specialized Loan Servicing asserted a claim secured by the Naples Property in the amount of $4,102,962.60. *Id.*

On July 7, the last business day before the July 10 motions hearing, Kelly filed a "notice of voluntary dismissal." *Id.*; *see* ECF 4-32. Kelly requested that her petition be dismissed pursuant to 11 U.S.C. § 1307(b). ECF 4-32, at 1.

### E.  Hearings

The NBC Entities, U.S. Bank, Specialized Loan Servicing, the Chapter 13 Trustee, Myers's Chapter 7 trustee, and Myers attended the July 10 hearing. *See* ECF 24, at 5–7. Kelly did not. *Id.*

In support of their motions, the NBC Entities filed documents from Kelly's and Myers's previous bankruptcy proceedings, certified copies of foreclosure pleadings in the Maryland and Florida cases, and copies of opinions in other cases finding that Kelly and/or Myers acted in bad faith. *In re Kelly*, 656 B.R. at 569–73. The bankruptcy court admitted the documents into evidence and took judicial notice of the proceedings involving Myers and Kelly in this and other courts. *Id.* at 573. Myers did not submit any evidence or testimony; he presented only oral argument. *Id.* Myers stated that Kelly "ha[d] very serious medical issues," which was why she filed the notice of voluntary dismissal. ECF 24, at 10:17–23. Myers conceded that Kelly was subject to a 180-day refiling bar under 11 U.S.C. § 109(g). *Id.* at 27:18–28:4. But he claimed she could not be subject to any further penalty, including a longer refiling bar or equitable servitude, because her case was dismissed by virtue of her notice of voluntary dismissal. *Id.* at 142:1–143:1. Myers also argued that he and Kelly owned all five properties on her bankruptcy schedules, including the Naples Property and Bethesda Property, as tenants by the entireties, so those properties were not part of Kelly's bankruptcy estate and could not be subjected to an equitable servitude without an adversary

proceeding. *Id.* at 161:21–165:20. And he claimed that Kelly never acted in bad faith. *Id.* at 187:8–13.

The Court held another hearing on August 1, this time on U.S. Bank's lift stay motion. *See* ECF 6. The NBC Entities, U.S. Bank, and Myers attended the hearing. *Id.* Again, Kelly did not. *Id.*

Sherry Benight, a case manager at Select Portfolio Servicing, testified about the foreclosure proceedings for the Bethesda Property. *See In re Kelly*, 656 B.R. at 574; *see also* ECF 6, at 4–81. U.S. Bank submitted documents related to the Note, Deed of Trust, and foreclosure litigation. *In re Kelly*, 656 B.R.at 574–75. Myers also testified at the hearing. *Id.* at 576. Myers admitted that he and Kelly have not made payments on the Note since 2010. *Id.* He also stated that even though Kelly's medical issues prevented her from attending the hearing, Kelly would not have attended the hearing even if she did not have medical issues because she believed her notice of a voluntary dismissal effectuated the dismissal of her Chapter 13 petition. *Id.*; *see also In re Kelly*, No. 23-12700-MCR, ECF 141, at 7:25–8:6, 173:23–174:4.

### F. Judgment

On December 11, 2023, the bankruptcy court issued a 101-page memorandum opinion on the pending motions. With regard to the NBC Entities' lift stay motion, the bankruptcy court (i) modified the automatic stay for cause "to permit the NBC Entities to fully and finally pursue their legal rights to dispose of all the matters arising from or relating to the Naples Litigation and to liquidate the NBC Entities' claim for costs awarded against Ms. Kelly and Mr. Myers in connection with the Naples Litigation," (ii) granted prospective relief so that the automatic stay would not apply to the Naples Litigation for four years, (iii) imposed an equitable servitude "with respect to any and all real property in which Ms. Kelly has an ownership and/or possessory interest

for a period of four years after the date that the order becomes final and nonappealable," (iv) granted prospective relief from the automatic stay so that the automatic stay would not apply "to any real property in which Ms. Kelly has an ownership and/or possessory interest in any bankruptcy case filed in any jurisdiction of the United States by any individual and/or entity asserting an interest in any of the properties for a period of four years after the order becomes final and nonappealable," (v) directed the NBC Entities to record a copy of the order in accordance with state laws governing notices of interests or liens in real property in Collier County, Florida, and in any other jurisdiction where Kelly may have an ownership or possessory interest in real property, (vi) directed the NBC Entities to file a certification with the bankruptcy court confirming they recorded the order, and (vii) waived the stay under Bankruptcy Rule 4001(a)(3) so that the order would be immediately enforceable. *Id.* at 550.

With respect to U.S. Bank's lift stay motion, the bankruptcy court (i) modified the automatic stay for cause to permit U.S. Bank to exercise its legal rights regarding the Bethesda Property, including foreclosure, (ii) modified the co-debtor stay, to the extent it applied, for cause to permit U.S. Bank to exercise its legal rights regarding the Bethesda Property, including foreclosure, (iii) imposed an equitable servitude on all property "with respect to any and all real property in which Ms. Kelly has an ownership and/or possessory interest for a period of four years after the date that the order becomes final and nonappealable," (iv) granted prospective relief from the automatic stay so that the automatic stay would not apply "to any real property in which Ms. Kelly has an ownership and/or possessory interest in any bankruptcy case filed in any jurisdiction of the United States by any individual and/or entity asserting an interest in any of the properties for a period of four years after the order becomes final and nonappealable," (v) directed U.S. Bank to record a copy of the order in accordance with state laws governing notices of interests or liens

14

in real property in Montgomery County, Maryland, and in any other jurisdiction where Kelly may have an ownership or possessory interest in real property, (vi) directed U.S. Bank to file a certification with the bankruptcy court confirming it recorded the order, and (vii) waived the stay under Bankruptcy Rule 4001(a)(3) so that the order would be immediately enforceable. *Id.* at 550–51. The bankruptcy court also granted the NBC Entities' motion to dismiss and dismissed the case with prejudice. *Id.* at 551. The court barred Kelly from "filing another bankruptcy case in any jurisdiction of the United States for a period of four years after the date that the order becomes final and nonappealable." *Id.* The bankruptcy court denied Kelly's notice of voluntary dismissal, which it construed as a motion to dismiss, as moot. *Id.* at 560.

The bankruptcy court found that Kelly and Myers's long history of bad faith conduct and abuse of the bankruptcy process justified the severe sanctions. *Id.* at 551. As the court explained, "Although the relief granted by the Court is extraordinary, Ms. Kelly and Mr. Myers' ongoing and largely unfettered abuse and exploitation of the bankruptcy process is far more extraordinary." *Id.* The bankruptcy court held that these sanctions—"particularly the equitable servitude, prospective relief from the automatic stay, and four-year bar to refiling"—are "necessary to allow creditors an opportunity to enforce their rights and pursue their claims without further obstruction and harassment by Ms. Kelly and Mr. Myers." *Id.* It also held that Kelly did not qualify as a Chapter 13 debtor. *Id.* at 581. And it found that Kelly failed to exercise reasonable diligence and good faith in completing her schedules. *Id.* at 583. It reviewed Kelly's and Myers's conduct in their eight previous bankruptcy filings and noted that most of the petitions were filed almost immediately before a foreclosure sale. *See id.* at 599. It found that Kelly was "anything but an 'honest but unfortunate debtor' that the bankruptcy laws were designed to protect." *Id.* at 603 (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 372–74 (2007)). Thus, the bankruptcy court

concluded that, under 11 U.S.C. §§ 105(a), 349(a), and 1307(c), it could dismiss the Chapter 13 petition and grant prospective relief because of Kelly's misconduct. *Id.* at 607. And it found "that the relief granted [was] necessary and appropriate under the unique facts of this case to protect the integrity of the Court and the bankruptcy process." *Id.* at 611.

This appeal followed.

## II.    Standard of Review

The Court has jurisdiction over appeals from the bankruptcy court. 28 U.S.C. § 158(a). The standard of review of a bankruptcy appeal in district court is the same standard used by appellate courts to review a district court proceeding. *See* 28 U.S.C. § 158(c)(2). A bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ." *Id.*; *see also In re Howes*, 563 B.R. 794, 804 (D. Md. 2016) (citing 28 U.S.C. § 158(c)(2)); *Conrad v. Schlossberg*, 555 B.R. 514, 515–16 (D. Md. 2016) (same). The Court "reviews a bankruptcy court's findings of fact for clear error and conclusions of law *de novo*." *Rosen v. Kore Holdings, Inc. (In re Rood)*, 448 B.R. 149, 157 (D. Md. 2011); *see In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014). Where the issues present mixed questions of law and fact, the Court employs "a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining *de novo* the legal conclusions derived from those facts." *Gilbane Bldg. Co. v. Fed. Reserve Bank*, 80 F.3d 895, 905 (4th Cir. 1996). The Court reviews decisions committed to the bankruptcy court's discretion, such as the involuntary dismissal of bankruptcy proceedings and the imposition of sanctions, for abuse of discretion. *See Sugar v. Burnett*, 130 F.4th 358, 369 (4th Cir. 2025); *see also In re Howes*, 563 B.R. at 805 ("[A] bankruptcy court's decision to order relief, pursuant to the authority granted to it under [11 U.S.C.] § 105(a), is reviewed for abuse of discretion.").

A bankruptcy court "abuses its discretion if its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (internal citations omitted). "However, even if the bankruptcy court applies the proper legal principles to supported facts, the district court may reverse if it holds 'a definite and firm conviction that the [bankruptcy court] committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Yankah v. Yankah (In re Yankah)*, 514 B.R. 159, 163–64 (E.D. Va. 2014) (alteration in original) (quoting *Westberry*, 178 F.3d at 261).

Finally, the Court notes that Kelly, notwithstanding her extensive litigation experience, is a *pro se* litigant. "[P]ro se documents are to be liberally construed." *Simmons v. Whitaker*, 106 F.4th 379, 387 (4th Cir. 2024); *see also United States v. McKoy*, 710 F. App'x 603, 603 (4th Cir. 2018) (per curiam) (affording *pro se* appellant's informal appellate brief liberal construction). Even so, "[p]rinciples requiring generous construction of *pro se* [filings] are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A reviewing court may not consider issues that were not raised in a *pro se* appellant's brief. *See id.*; *Laurent v. Select Portfolio Servicing, Inc. (In re Laurent)*, 193 F. App'x 831, 833 (11th Cir. 2006) (construing *pro se* appellant's brief liberally but finding appellant's arguments as to the underlying bankruptcy decision waived); *see also Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)).

## III.    Discussion

Kelly raises three issues on appeal. First, she claims that the bankruptcy court abused its discretion when it granted the Creditors' motion to dismiss under 11 U.S.C. § 1307(c) and denied

as moot her motion to dismiss under § 1307(b). Second, Kelly claims that pursuant to § 1307(b) and 11 U.S.C. § 349(a), the bankruptcy court lacked the authority to bar her from refiling a bankruptcy petition for longer than 180 days. Third, Kelly claims that the bankruptcy court lacked jurisdiction to grant prospective relief to her creditors on property she owns with Myers as tenants by the entireties.

Kelly is right that the bankruptcy court erred by denying as moot her motion to dismiss under § 1307(b). But Kelly is wrong about everything else. The bankruptcy court could have imposed the same relief regardless of whether it dismissed her petition under § 1307(b) or § 1307(c). And the bankruptcy court had the authority to grant prospective relief to her creditors.

### A.  Section 1307(b) Motion to Dismiss

Kelly's first argument is that the bankruptcy court did not have discretion to deny her motion to dismiss under § 1307(b). The Creditors do not argue otherwise. The Court agrees with Kelly that § 1307(b) grants a Chapter 13 debtor the absolute and unqualified right to voluntarily dismiss their case.

Section 1307(b) provides: "On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable." 11 U.S.C. § 1307(b).

The plain language of § 1307(b) is clear. Once the debtor requests to dismiss their Chapter 13 case, the bankruptcy court "*shall*" dismiss the case, so long as the case has not been converted from another chapter. "[T]he word 'shall,' when used in a statutory context, is generally construed to be mandatory." *Holland v. Pardee Coal Co.*, 269 F.3d 424, 431 (4th Cir. 2001). The statute contains one—and only one—exception: if the case has been previously converted. And the

debtor's request to dismiss may come "at any time." The plain language is unambiguous that bankruptcy courts lack discretion to deny a motion to dismiss under § 1307(b) unless the case been converted under §§ 706, 1112, or 1208.

Even so, courts are split on whether § 1307(b) endows Chapter 13 debtors with an absolute and unqualified right to dismiss a Chapter 13 case. The Fourth Circuit has yet to weigh in on this debate. The more recent circuit court authority suggests that § 1307(b) is absolute and leaves no room for judicial discretion. *See In re Nichols*, 10 F.4th 956, 963 (9th Cir. 2021) ("Section 1307(b)'s text plainly requires the bankruptcy court to dismiss the case upon the debtor's request. There is no textual indication that the bankruptcy court has any discretion whatsoever."); *In re Smith*, 999 F.3d 452, 455 (6th Cir. 2021) ("By its plain terms, [section 1307(b)] is mandatory: upon the debtor's request, subject to one exception not applicable here (namely that the case was not converted to Chapter 13 from another chapter), the court 'shall dismiss' a Chapter 13 case."); *see also In re Barbieri*, 199 F.3d 616, 619 (2d Cir. 1999) ("Section 1307(b) unambiguously requires that if a debtor 'at any time' moves to dismiss a case that has not previously been converted, the court 'shall' dismiss the action. The term 'shall,' as the Supreme Court has reminded us, generally is mandatory and leaves no room for the exercise of discretion by the trial court."). The Fifth Circuit and the Eighth Circuit, conversely, have held that a debtor's right to dismiss their case under § 1307(b) may be conditioned upon the debtor's good faith. *See In re Jacobsen*, 609 F.3d 647, 660 (5th Cir. 2010); *In re Molitor*, 76 F.3d 218, 220–21 (8th Cir. 1996). Even courts within this district have arrived at divergent outcomes. *Compare Clearstory & Co. v. Blevins*, 225 B.R. 591, 592 (D. Md. 1998) ("Section 1307(b) is unequivocal in stating that the debtor may request dismissal 'at any time' and that when such a request is made, the court 'shall' dismiss the case."), *with In re Kotche*, 457 B.R. 434, 440 (Bankr. D. Md. 2011) (granting motion to convert

under § 1307(c) and denying motion to dismiss under § 1307(b) because § 1307(b) motion "was filed in bad faith, and is an abuse of the bankruptcy process").

The split largely derives from the application of two Supreme Court decisions: *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), and *Law v. Siegel*, 571 U.S. 415 (2014). In *Marrama*, the Supreme Court considered whether a debtor had an absolute right to convert their Chapter 7 case to a Chapter 13 case when the debtor acted in bad faith. *See* 549 U.S. at 367–68. Under 11 U.S.C. § 706(a), a debtor "may convert a case under [chapter 7] to a case under chapter 11, 12, or 13 of this title at any time," if the case has not been previously converted. However, under § 706(d), "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." The Supreme Court held that § 706(d) would bar the debtor's motion to convert her case to a Chapter 13 case if the debtor is not qualified as a Chapter 13 debtor under § 1307(c). *Marrama*, 549 U.S. at 374. Section 1307(c) states that a Chapter 13 proceeding may be converted to a Chapter 7 proceeding "for cause." *Id.* at 373. One of those "cause[s]," the Supreme Court held, was bad faith conduct. *Id.* In other words, "a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Id.* at 373–74.

The *Marrama* Court also looked to another section of the Bankruptcy Code, § 105(a), which grants bankruptcy judges the authority to "take any action that is necessary or appropriate 'to prevent an abuse of process.'" *Id.* at 375 (quoting § 105(a)). It found that § 105(a) "is surely adequate" to authorize a denial of a motion to convert under § 706(a). *Id.* And it also highlighted the purpose of Chapter 13 bankruptcy: to protect "honest but unfortunate debtors," who "do

20

possess an absolute right to convert their cases from Chapter 7 to Chapter 13." *Id.* at 374. Noting that "[n]othing in the text of either § 706 or § 1307(c) (or the legislative history of either provision)," barred the denial of a motion to convert based on bad faith, the Court affirmed that § 706(a) created no absolute right to convert a Chapter 7 case to a Chapter 13 case. *Id.* at 374–75.

Though *Marrama* did not mention § 1307(b), courts have interpreted *Marrama* to authorize the denial of § 1307(b) motions to dismiss if the debtor has acted in bad faith. *See, e.g.*, *In re Jacobsen*, 609 F.3d at 660 ("Following the Supreme Court's decision in *Marrama*, we hold that a bankruptcy court has the discretion to grant a pending motion to convert for cause under § 1307(c) where the debtor has acted in bad faith or abused the bankruptcy process and requested dismissal under § 1307(b) in response to the motion to convert."); *In re Rosson*, 545 F.3d 764, 773–74 (9th Cir. 2008) ("Therefore, in light of *Marrama*, we hold that the debtor's right of voluntary dismissal under § 1307(b) is not absolute, but is qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad-faith conduct or 'to prevent an abuse of process.'"), *overruled by In re Nichols*, 10 F.4th at 962–63; *In re Kotche*, 457 B.R. at 440 ("[T]he Supreme Court's holding in *Marrama* that a debtor's bad faith conduct can forfeit his or her right to conversion, appears equally applicable [to § 1307(b)]."); *In re Mitrano*, 472 B.R. 706, 711 (E.D. Va. 2012) ("[T]he inherent power of every federal court to sanction abusive litigation practices similarly persuades the Court that the reasoning in *Marrama* should apply to the case of a Chapter 13 debtor seeking dismissal under § 1307(b)."). Indeed, the bankruptcy judge here found that *Marrama* created a good faith requirement for a § 1307(b) motion. *See* ECF 24-1, at 13:14–17 ("Well, Mr. Myers, there's ample case law including the Supreme Court's *Marrama* decision . . . that allow[s] this Court to examine cases for good faith . . . .").

But the Supreme Court clarified the scope of *Marrama* in *Law v. Siegel*. Under the Bankruptcy Code, the debtor in *Law* could exempt $75,000 of equity in his home from the bankruptcy estate. 571 U.S. at 422. The bankruptcy court ordered that $75,000 be made available to pay the trustee's attorney's fees as punishment for the debtor's fraudulent conduct during the bankruptcy process. *Id.* The Supreme Court reversed. *Id.* at 428. It held that a bankruptcy court may not contravene an express provision of the Bankruptcy Code by referencing its power under § 105(a). *Id.* at 421. The Court noted that, although *Marrama* suggested that the bankruptcy court's refusal to convert the case was authorized under § 105(a) and might have been authorized under the court's inherent powers, that section of the opinion was dictum. *Id.* at 426. As the Court explained, "*Marrama* most certainly did not endorse, even in dictum, the view that equitable considerations permit a bankruptcy court to contravene express provisions of the Code." *Id.* So while the Court affirmed the bankruptcy courts' "essential authority to respond to debtor misconduct with meaningful sanctions," those sanctions may not conflict with the explicit protections of the Code. *Id.* at 427–28 (internal quotation marks omitted).

*Law* applies here. Section 1307(b) is clear and unequivocal. So long as the Chapter 13 petition has not been converted, the bankruptcy court *must* grant a motion to dismiss under § 1307(b), even if there is a pending § 1307(c) motion and even if the debtor is operating in bad faith.[3] *See In re Minogue*, 632 B.R. 287, 293 (Bankr. D.S.C. 2021) ("Given the clear instruction of *Law v. Siegel* and its consideration of *Marrama*, this Court finds no reason to conclude that a Chapter 13 debtor may be precluded from voluntarily dismissing his or her Chapter 13 case in the face of a pending motion to convert or allegations of bad faith conduct."); *In re Fulayter*, 615 B.R. 808, 821 (Bankr. E.D. Mich. 2020) ("A bankruptcy court may punish a Chapter 13 debtor's

---

[3] In this case, the § 1307(c) motion was filed after Kelly filed her § 1307(b) motion.

misconduct, and has lots of tools to do so, but there is nothing in the Bankruptcy Code that permits a bankruptcy court to punish a Chapter 13 debtor's misconduct by denying the debtor's motion to dismiss under § 1307(b)."). Neither *Marrama* nor § 105(a) gives bankruptcy courts discretion to disregard the statutory command that "[o]n request of the debtor at any time," the court "shall dismiss the case." *See* 11 U.S.C. § 1307(b). Here, because Kelly's case had not been converted, the court was required to dismiss her case under § 1307(b). The bankruptcy court erred when it granted the Creditors' § 1307(c) motion and denied Kelly's § 1307(b) motion as moot.

### B. Refiling Bar

The Creditors argue that, regardless of whether the case was dismissed under § 1307(b) or § 1307(c), bankruptcy courts may impose conditions on the dismissal. This time, the Court agrees with the Creditors. Even though the bankruptcy court erred by dismissing the petition under § 1307(c) and denying Kelly's motion to dismiss under § 1307(b), the error was harmless. Under Federal Rule of Bankruptcy Procedure 9005, which incorporates Federal Rule of Civil Procedure 61's harmless error, a court "may order the correction of any error or defect—or the cure of any omission—that does not affect a substantial right" without remanding the case. *See McNeil v. Drazin*, 499 B.R. 484, 490 (D. Md. 2013) (holding that the bankruptcy court's failure to use an adversary proceeding under Rule 7001 was harmless error because the bankruptcy court provided the debtor due process).

The bankruptcy court's error was harmless because even if it had granted Kelly's motion to dismiss, nothing in the Code prevents the bankruptcy court from granting the motion to dismiss with prejudice and imposing additional sanctions. A motion to dismiss under § 1307(b) is not, as Kelly urges, self-executing. *See In re Marinari*, 596 B.R. 809, 819 (Bankr. E.D. Pa. 2019) (noting that the right to dismiss under § 1307(b) "is not unconditional or self-executing"); *In re Greenberg*,

200 B.R. 763, 768 (Bankr. S.D.N.Y. 1996) ("Section 1307(b) is not self-executing; the debtor must make a formal motion, serve it in accordance with Fed. R. Bankr. P. 1017(d), and the court must enter a dismissal order."). Even a case that Kelly cites in her opening brief, *In re Minogue*, says that a bankruptcy court may impose sanctions in connection with a voluntary dismissal under § 1307(b). *See* 632 B.R. at 294 ("[E]ven if a Chapter 13 debtor is entitled to voluntary dismissal of his or her Chapter 13 case under § 1307(b), the Court maintains authority under the Bankruptcy Code to supplement the dismissal with remedial measures provided under the Bankruptcy Code to address a Chapter 13 debtor's bad faith conduct."). Other courts agree. *See, e.g.*, *In re Sinischo*, 561 B.R. 176, 194–95 (Bankr. D. Colo. 2016) (imposing sanctions on debtor while granting debtor's § 1307(b) motion after finding that debtor filed for Chapter 13 bankruptcy in bad faith); *In re Greenberg*, 200 B.R. at 768 (holding that a debtor cannot "use the commencement and voluntary withdrawal of her chapter 13 case as a tactic to harass and frustrate her legitimate creditors" and the court "can impose conditions [on the voluntary dismissal] to protect against further abuse"); *In re Criscuolo*, No. 09-14063, 2014 WL 1910078, at *5 (Bankr. E.D. Va. May 13, 2014) ("There is certainly nothing in Section 1307(b) that prohibits a dismissal on terms and conditions, including a proscription on re-filing a case for a defined period of time.").

One of a bankruptcy court's tools to punish a debtor acting in bad faith is a bar to refiling. *See Sugar*, 130 F.4th at 374 (affirming that the bankruptcy court had the authority to impose a five-year refiling bar on a Chapter 13 debtor, while holding that the bankruptcy court abused its discretion by imposing a bar without considering whether the debtor acted on the advice of counsel; *Palsata Tr. v. Fitzgerald*, No. 21-cv-376, 2022 WL 981939, at *5 (E.D. Va. Mar. 30, 2022) (finding that the imposition of a two-year refiling bar was not an abuse of discretion when "less restrictive refiling bars had already proved ineffective"); *In re Caldrello*, No. 24-20209, 2024

WL 1707481, at *3–4 (Bankr. D. Conn. Apr. 19, 2024) (finding that the debtor's bad faith warranted dismissal with a two-year refiling bar under any chapter in any district in order to "deter the proliferation of abusive, redundant, and wasteful litigation proceedings").

Kelly agrees that she may be barred from refiling. However, Kelly insists she may be barred only for 180 days, the maximum period allowed under the automatic bar provision of 11 U.S.C. § 109(g). That provision reads:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
> (1)     the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
> (2)     the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

Kelly concedes that she is covered by § 109(g)(2) because she requested the voluntary dismissal of her Chapter 13 case after creditors moved for relief from the automatic stay provision. But § 109(g)(2) does not, by its terms, provide the exclusive remedy under these circumstances. Kelly says another Code provision, 11 U.S.C. § 349(a), limits the court's power to impose a refiling bar that exceeds 180 days.

Section 349(a) states:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

In Kelly's view, § 349(a) prohibits a bankruptcy court from imposing a refiling bar distinct from the automatic refiling bar in § 109(g) because the second clause says: "nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under

this title, *except as provided in section 109(g) of this title*." *Id.* (emphasis added). However, § 349(a) begins with the qualifying phrase: "[u]nless the court, for cause, orders otherwise." *Id.* As Kelly interprets the statute, that qualifying language applies only to the dischargeability bar in the first clause of § 349(a), *not* to the refiling bar in the second clause.

The Tenth Circuit agrees with Kelly. In *Frieouf v. United States (In re Frieouf)*, 938 F.2d 1099 (10th Cir. 1991), the court explained, "[E]ach clause contains its own qualifying phrase; the discharge clause is modified by the 'unless the court, for cause, orders otherwise' language, and the filing clause is modified differently by reference to section 109(g)." *Id.* at 1103. Thus, "section 349(a) only denies a debtor future discharge of debts dischargeable in that particular case. Section 349(a) does not deny a debtor all future access to bankruptcy court, *except as provided in section 109(g)*." *Id.* To do so, the court held, would not only contradict the plain language of the statute, but pose due process and equal protection concerns. *Id.* at 1104.

*Frieouf* is not the law of this circuit. The Fourth Circuit has strongly suggested that a bankruptcy court may impose a bar on refiling that exceeds 180 days. *See Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 939 (4th Cir. 1997) (noting that bankruptcy court's order dismissing case "with prejudice" did not "state the period of time that it would be in effect, *e.g.*, the 180-day period provided in § 109(g) *or a longer period*" (emphasis added)); *Sugar*, 130 F.4th at 374 (stating that there was "no question that the bankruptcy court had the authority to enter" an order barring a debtor from refiling for bankruptcy for five years (emphasis omitted)). The majority of courts that have decided this issue have held that, under § 105 and § 349(a), a bankruptcy court may impose a refiling bar that is longer than the 180-day limit in § 109(g). In *Casse v. Key Bank National Association (In re Casse)*, for example, the Second Circuit referred to *Frieouf* as the "distinctly minority view" and noted that, "in all circuits but the Tenth, bankruptcy courts and

district courts invariably derive from § 105(a) or § 349(a) of the Code . . . the power to sanction bad-faith serial filers . . . by prohibiting further bankruptcy filings for longer periods of time than the 180 days specified by § 109(g)." 198 F.3d 327, 337–38 (2d Cir. 1999); *see also Dietrich v. Nob-Hill Stadium Props. (In re Dietrich)*, No. 05-2255, 2007 WL 579547, at *5 (6th Cir. Feb. 15, 2007) (rejecting *Frieouf* and holding that "the plain language of section 349(a) appears to allow a bankruptcy court to dismiss a bankruptcy petition with prejudice, permanently, if there is sufficient cause"); *In re Jolly*, 143 B.R. 383, 387 (E.D. Va. 1992) ("[S]o long as the dismissing court finds cause, a bankruptcy action may be dismissed with prejudice for 180 days, or more, without violating the terms of § 349(a) or, for that matter, § 109(g)."); *B-3 Properties, LLC v. Lasco*, 517 B.R. 889, 897 (N.D. Ind. 2014) ("*In re Frieouf* has been widely criticized by nearly every other circuit addressing this issue . . . because it essentially reads out Section 349(a)'s statement of 'unless the court, for cause, orders otherwise . . . .'").

The Court agrees that bankruptcy courts derive from § 105(a) and § 349(a) the power to sanction bad faith serial bankruptcy filers by prohibiting further bankruptcy filings for more than the 180 days specified in § 109(g). Here, bankruptcy court had the authority to impose a four-year refiling bar under § 349(a) and § 105(a). And considering the sheer breadth and egregiousness of Kelly's conduct, the four-year refiling bar was not an abuse of discretion. For starters, Kelly does not argue in her opening brief that the imposition of the refiling bar was an abuse of discretion or that the bankruptcy court's bad faith finding was clearly erroneous. Her entire argument on the refiling bar in her opening brief is as follows: "As and for her argument, Ms. Kelly adopts and restates herein the legal argument and legal conclusions set forth in *In re Minogue*, 632 B.R. 287 (Bankr. D.S.C. 2021)." ECF 18, at 6. In her reply brief, Kelly claims that she "argued in her opening brief and in her papers filed in her bankruptcy case that the bankruptcy court's finding of

bad faith was clearly erroneous—that there was no bad faith in connection with her petition." ECF 29, at 13. Kelly is wrong. Her opening brief does not mention "bad faith" or "clearly erroneous" at all. Generally, the Court may not consider arguments a party makes for the first time in a reply brief. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)); *see also Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995) (explaining that "courts generally will not address new arguments raised in a reply brief because it would be unfair to the [other party] and would risk an improvident or ill-advised opinion on the legal issues raised").

Even so, the Court finds that the bankruptcy court's bad faith finding was not clearly erroneous. Kelly and Myers filed for bankruptcy nine times in the preceding nine years, often within a day or two of an impending foreclosure sale. Judges in this court have repeatedly found that Kelly and her husband acted in bad faith. *See Myers v. Schlossberg*, No. PX-18-3783, 2019 WL 414875, at *2 (D. Md. Feb. 1, 2019) (dismissing Myers's bankruptcy appeal while noting that "[a]lthough dismissal is a harsh sanction, and not to be imposed lightly, nothing less is warranted where [Kelly and Myers] have engaged in questionable tactics evidently designed to delay the resolution of the bankruptcy case"); *Kelly v. Offit Kurman, P.A.*, No. CCB-17-3668, 2021 WL 3725379, at *12 (D. Md. Aug. 23, 2021) (finding that Kelly's amended complaint "was filed in bad faith and for the purpose of the delay"); *Kelly v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch P.A*, No. GLH-21-1186, 2022 WL 861395, at *3 (D. Md. Mar. 23, 2022) (dismissing Kelly's bankruptcy appeals and finding that they were "efforts to further delay [Kelly and Myers's] underlying bankruptcy proceeding"); *Kelly v. U.S. Tr.*, DLB-23-958, ECF 9, at 5 (D. Md. June 21, 2023) (finding dismissal of appeal warranted because "Kelly acted in bad faith by failing to timely file her designation of the record and statement of issues"). The bankruptcy court also found that

"Ms. Kelly filed this bankruptcy case with a petition for relief under Chapter 13 even though there is no question that she is not eligible . . . and demonstrated her continued bad faith by failing to exercise even a modicum of diligence in completing her schedules." *In re Kelly*, 656 B.R. at 601. The bankruptcy court described Kelly's repeated abuses of the bankruptcy process in its exhaustive, 101-page opinion. The bankruptcy court's determination that Kelly acted in bad faith was not clearly erroneous.

Nor was the four-year refiling bar an abuse of discretion. The Fourth Circuit has remarked that even the 180-day filing bar "is 'an *extraordinary* statutory remedy for *perceived abuses* of the [Bankruptcy] Code.'" *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 487 (4th Cir. 2015) (quoting *Frieouf*, 938 F.2d at 1104). As the bankruptcy court explained, Kelly's abusive conduct was extraordinary. Courts have imposed similar, if not longer, refiling bars for similarly egregious conduct. *See Emiabata v. Vetter (In re Emiabata)*, No. 23-cv-02008, 2024 WL 3471248, at *1 (D.D.C. July 18, 2024) (affirming a four-year refiling bar on a debtor who, along with his wife, filed at least 18 Chapter 13 bankruptcy cases in multiple jurisdictions over 20 years); *In re Jordan*, 598 B.R. 396, 411 (Bankr. E.D. La. 2019) (imposing a five-year refiling bar when a debtor filed five Chapter 13 petitions and his conduct evidenced "a blatant misuse of the bankruptcy system that cannot be tolerated"); *In re Smith*, 536 B.R. 478, 483 (Bankr. M.D. Ala. 2015) (imposing a five-year refiling bar on a debtor who converted funds designated to pay creditors and did not respond to the trustee's repeated requests for information); *In re Via*, No. 19-bk-33999, 2020 WL 1015264, at *5 (Bankr. E.D. Tenn. Feb. 27, 2020) (imposing a five-year refiling bar when a debtor had filed 11 cases within 18 years); *see also In re Wilcoxon*, No. 18-62228, 2018 WL 6016540, at *3 (Bankr. N.D. Ohio. Nov. 15, 2018) (stating that if the debtor's Chapter 13 petition were dismissed, he would be barred from refiling for five years because he "has successfully used the

timing of his many bankruptcy petitions to continually frustrate his creditors, he has again and again neglected to produce any evidence of completion of credit counseling, and he has not made a single installment payment on a case since his last successful discharge in 2012"). The bankruptcy court already had dismissed another one of Kelly's futile Chapter 13 petitions with prejudice, subject to the 180-day refiling bar under § 109(g)(2). That clearly was not effective. Though the Creditors requested only a two-year refiling bar, the bankruptcy court acted within its discretion to impose a longer bar, given the extent of Kelly's bad faith conduct across multiple bankruptcy proceedings and appeals.

In sum, the bankruptcy court erred when it ruled on the Creditors' § 1307(c) motion and denied Kelly's § 1307(b) motion as moot. But the error was harmless. The bankruptcy court could have "just as easily attached" its refiling injunction to a dismissal under § 1307(b). *See In re Ross*, 858 F.3d 779, 784 (3d Cir. 2017) (recognizing that even if the bankruptcy court should have dismissed the Chapter 13 proceedings under § 1307(b) instead of § 1307(c), "the Bankruptcy Court could have just as easily attached its filing injunction to [debtor's] requested dismissal order"). And under this Court's deferential standard of review, the four-year refiling injunction, while severe, was not an abuse of discretion.

### C. Prospective Relief

The bankruptcy court granted two forms of prospective, *in rem* relief. First, the bankruptcy court ordered that the automatic stay does not apply to the Naples Litigation in any bankruptcy case filed by Kelly or to any real property in which Kelly has an ownership and/or possessory interest in any bankruptcy case filed by any person or entity. Second, the bankruptcy court imposed an equitable servitude on all real property in which Kelly has an ownership or a possessory interest for four years. Kelly argues that the bankruptcy court abused its discretion by granting prospective

relief to the parties-in-interest and directing them to record an encumbrance and equitable servitude on Kelly's properties. Once again, Kelly is wrong.

An *in rem* order is an order involving property, not people. "Orders that grant *in rem* relief are grounded in the bankruptcy court's jurisdiction over a *res* which is property of the estate." *In re Price*, 304 B.R. 769, 773 (Bankr. N.D. Ohio 2004). Bankruptcy courts have long imposed equitable relief in the form of *in rem* orders to prevent further abuse of the bankruptcy system and allow innocent creditors to complete foreclosure. An *in rem* order operates as an equitable servitude on property to "deny the protection of the automatic stay under 11 U.S.C. § 362(a) to the subject property upon the filing of a subsequent bankruptcy case for a period of time sufficient to allow the creditor holding the secured claim to consummate a foreclosure." *In re Nelson*, No. 06-11691-RAG, 2006 WL 4671846, at *1 (Bankr. D. Md. July 27, 2006).

One of the earliest cases granting this form of relief is *In re Yimam*, 214 B.R. 463 (Bankr. D. Md. 1997). In *In re Yimam*, the debtor and her non-debtor husband repeatedly stymied a secured creditor's attempts to foreclose on their property by playing bankruptcy tag. *Id.* at 466. Either the debtor or her husband would file a bankruptcy petition and gain the benefit of the automatic stay. *Id.* at 465. The court found that the couple's repeated, futile bankruptcy filings constituted a "continuing abuse of the bankruptcy process." *Id.* The court feared that without an equitable servitude, the couple could convey property interests, even fractional interests, to third parties and then "stave off foreclosure for a considerable period." *Id.* at 466. To remedy such abuse, the court imposed an equitable servitude barring the application of the automatic stay to the couple's property for 180 days to enable the couple's secured creditor to consummate foreclosure. *Id.* at 467.

Since *In re Yimam*, courts have affirmed the power of bankruptcy courts, under § 105(a), to impose an equitable servitude on a debtor's real property. *See In re Gonzalez-Ruiz*, 341 B.R. 371, 384 (B.A.P. 1st Cir. 2006) ("Section 105(a) of the Bankruptcy Code authorizes a bankruptcy court to grant *in rem* relief in connection with granting relief from the stay under § 362(d) in circumstances where an ordinary stay relief order will not be effective to protect a secured lender's rights, as demonstrated by the prior history of the parties and the property. The remedy is imposed where there has been an abuse of the bankruptcy laws and of the automatic stay resulting from the filings of multiple bankruptcy cases." (citations omitted)); *In re Toggas*, Civ. No. 19-3589, 2022 WL 194382, at *3–4 (D.D.C. Jan. 21, 2022) (affirming a two-year equitable servitude on a debtor's property when the debtor filed seven Chapter 13 bankruptcy petitions, each before a scheduled foreclosure sale); *In re Ihejurobi*, No. 18-13380-RAG, 2019 WL 2016612, at *11 (Bankr. D. Md. May 6, 2019) (imposing an equitable servitude when the debtor had not prosecuted his case in good faith and the debtor's plan was objectively futile).

Courts have found such relief especially appropriate when the debtor is working in concert with their spouse or other co-owners to repeatedly file bankruptcy petitions to benefit from the automatic stay. *E.g.*, *In re Muhaimin*, 343 B.R. 159, 173 (Bankr. D. Md. 2006) (finding an equitable servitude on real property owned by a debtor and her non-debtor husband appropriate "based on the three bankruptcy cases filed in 17 months by the Debtor or [her spouse], two of which were filed on the day of or the day prior to a scheduled foreclosure sale," which "is the type of conduct that constitutes a continuing abuse of the bankruptcy process"); *In re Price*, 304 B.R. at 774 (imposing an equitable servitude when a debtor and her husband "ha[d] filed tag-team bankruptcies in order to avoid Bank of America's legitimate efforts to recover their collateral," which were "evidence of bad faith and evidence of the fact that Debtor and her husband [were]

abusing the bankruptcy process"); *In re Roeben*, 294 B.R. 840, 847–48 (Bankr. E.D. Ark. 2003) (imposing an equitable servitude when a debtor and her spouse filed six bankruptcy petitions in five years, each of which were dismissed due to their inaction, and their efforts showed "that an ordinary relief from stay order w[ould] not be effective").

In 2005, Congress codified the power of bankruptcy courts to enter *in rem* orders to combat serial bankruptcy filers. In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, Congress amended the Bankruptcy Code to authorize bankruptcy courts to enter *in rem* orders to combat serial filing. 11 U.S.C. § 362(d)(4) provides that, "[o]n request of a party in interest and after notice and a hearing," the court shall grant relief "with respect to a stay of an act against real property . . . by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors," that involved, as relevant here, "multiple bankruptcy filings affecting such real property." If the order is "recorded in compliance with applicable State laws governing notices of interests or liens in real property," the order "shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court." *Id.* A debtor in a subsequent bankruptcy case "may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing." *Id.* The Code directs any federal, state, or local government unit that accepts notices of interests or liens in real property to accept a certified copy of any order under § 362(d)(4) for indexing and recording. *Id.*

While § 362(d)(4) codifies a bankruptcy court's power to enter certain *in rem* orders, it does not supersede a bankruptcy court's power to enter other *in rem* orders pursuant to § 105(a). *See In re Muhaimin*, 343 B.R. at 173 ("BAPCPA § 362(d)(4) is not inconsistent with the *Yimam*

doctrine. The findings necessary to grant or deny relief under one would not foreclose relief under the other. . . . Consequently, relief under *Yimam* is not superceded by BAPCPA § 362(d)(4), but rather survives and co-exists *in pari materia* with it, as an alternative remedy available to creditors dealing with serial bankruptcy filers."); *In re Henderson*, 395 B.R. 893, 901 & n.15 (Bankr. D.S.C. 2008) (granting *in rem* order under § 105(a) and noting "Congress gave no indication in enacting § 362(d)(4) that it intended to prevent bankruptcy courts from employing 11 U.S.C. § 105(a) . . . to enter orders, when necessary or appropriate, to prevent the harm arising from abusive filings. If anything, the 2005 amendments evidence a congressional intent that the courts crack down on abusive filings by debtors" (alteration in original) (quoting *In re McCray*, 342 B.R. 668, 670 (Bankr. D.D.C. 2006))). Indeed, bankruptcy courts have continued to grant *in rem* orders under their § 105(a) authority, even after the addition of § 362(d)(4) to the Code. *See In re Toggas*, 2022 WL 194382, at *3 (citing *Yimam* and affirming the imposition of an equitable servitude); *In re Ihejurobi*, 2019 WL 2016612, at *5, *11 (citing *Yimam* and imposing an equitable servitude of one year).

Kelly argues that the bankruptcy court lacked jurisdiction to enter an *in rem* order against her properties because she co-owns them with Myers as tenants by the entireties. In her view, the bankruptcy court could not enter an *in rem* order that applied to the whole of her entireties properties, because only her interest in the properties, not Myers's interest, is in her bankruptcy estate. For this proposition, Kelly cites *Alvarez v. HSBC Bank USA (In re Alvarez)*, 733 F.3d 136 (4th Cir. 2013). *In re Alvarez* does not support Kelly's position. There, the Fourth Circuit held that a bankruptcy court may not strip off a valueless lien against real property that a debtor owns with his non-debtor spouse as tenants by the entireties. 733 F.3d at 138. The court reasoned that, under the Bankruptcy Code, "a debtor's undivided interest in entireties property is part of that debtor's

bankruptcy estate," but one spouse's filing of a bankruptcy petition "do[es] not sever the unities of a tenancy by the entirety." *Id.* at 141. Thus, the court found only the debtor's "interest in the entireties property, and not the whole of the entireties property owned by the marital unit, became part of his bankruptcy estate." *Id.* Even though the debtor and his non-debtor spouse filed a joint complaint to strip the lien from their jointly owned property, the complaint did not make the property interest of the non-debtor spouse part of the bankruptcy estate. *Id.* at 142. The bankruptcy court lacked the authority to modify a lienholder's rights with respect to the non-debtor's interest in entireties property. *Id.*

*In re Alvarez* did not involve an *in rem* order. The bankruptcy court correctly distinguished *In re Alvarez* on the grounds that its order did not "affect[] the ownership of Ms. Kelly's and Mr. Myers' property." *In re Kelly*, 656 B.R. at 610. The bankruptcy court's *in rem* order does not affect Myers's interest in the jointly owned properties. Myers has the same ownership and possessory interests in those properties even with the order in effect. The order simply states that there will be no automatic stay on any of the entireties properties if anyone with an interest in the properties files a bankruptcy petition. That relief is well within a bankruptcy court's authority under the Bankruptcy Code. It does not matter that Kelly and Myers own the properties as tenants by the entireties. The bankruptcy court could validly enter an order barring application of the stay as to the *property*, not simply Kelly's interest in the property.

As one court explained,

> it would be difficult to provide for *in rem* relief, relief as to the property, if the Court could only grant partial *in rem* relief—that is, relief as to certain persons' interests in that property. Thus, *in rem* relief should be just that—relief affecting all entities claiming to hold an interest in the property, regardless of whether they sought bankruptcy protection.

*In re Montalvo*, 416 B.R. 381, 388 (Bankr. E.D.N.Y. 2009); *Aurora Loan Servs. Inc. v. Amey (In re Amey)*, 314 B.R. 864, 871 (Bankr. N.D. Ga. 2004) ("An *in rem* order may be issued not only with regard to the interest of a debtor in a pending case, but also with regard to the interests of nondebtor co-owners."). Indeed, § 362(d)(4) "specifically provides that a court may grant *in rem* relief with respect to the stay of an act *against real property*, and the provision does not limit that relief to relief only against the debtor's interest in the subject real property." *Askri v. U.S. Bank, N.A.*, 612 B.R. 867, 871 (E.D. Va. 2020). The Code is clear: "[*I*]*n rem* relief provides relief as to all entities claiming to hold an interest in the subject property, regardless of whether they sought bankruptcy protection." *Id.* If that were not the case, § 362(d)(4) would be invalid. *Id.* at 871–72.

Notwithstanding the language in *In re Alvarez* that Kelly cites, courts within the Fourth Circuit have continued to impose equitable servitudes to prevent abuse of the bankruptcy process. *See In re Ihejurobi*, 2019 WL 2016612, at *11; *see also Ahmed v. NewRez LLC*, Civ. No. TDC-19-2534, 2020 WL 1904699, at *1 (D. Md. Apr. 17, 2020). These *in rem* orders bind not only the debtor and anyone else who holds an interest in the property at the time of the order, but subsequent owners—who, by definition, have yet to obtain *any* interest in the estate. *See Great W. Bank v. Snow (In re Snow)*, 201 B.R. 968, 974 (Bankr. C.D. Cal. 1996); *see also In re Alakozai*, 499 B.R. 698, 698 (B.A.P. 9th Cir. 2023) (holding that an *in rem* order applied to a debtor's spouse, even though the spouse was not a debtor in her husband's bankruptcy case in which the *in rem* order was entered).

To reiterate, an equitable servitude runs with the land itself, not with the owner's interest in the land. The purpose of an equitable servitude is "to transfer an owner's entitlements, other than possession, for the efficient utilization of land." *In re Yimam*, 214 B.R. at 466–67. A court may validly impose an equitable servitude on a debtor's real property if it finds the "efficient

utilization of the property . . . at issue will be best promoted by permitting [a secured creditor] to proceed with its foreclosure sale unimpeded by a further automatic stay resulting from the filing of a bankruptcy case by any subsequent owner of the property at issue." *Id.* That is what the bankruptcy court properly did here.

Kelly argues that the grant of *in rem* relief deprived her and Myers of due process. Kelly raises this argument for the first time in her reply brief, so the Court need not consider it. She also did not raise a due process concern before the bankruptcy court. Even so, the Court finds that the *in rem* relief did not deprive Kelly or Myers of due process.

The Fifth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. Const. amend. V. "In any proceeding where one of these interests is at stake, reasonable notice and an opportunity to be heard are fundamental." *In re Roeben*, 294 B.R. at 846. A bankruptcy court may award equitable relief affecting real property only if the property's owner has received notice and has had an opportunity to be heard. *See generally Mullane v. Centr. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also In re Greenstein*, 576 B.R. 139, 168 (Bankr. C.D. Cal. 2017) ("[T]he Court is persuaded that the well-settled principles of procedural due process applicable to in rem proceedings require that the owner of such property receive notice and an opportunity to be heard."). Consistent with this requirement, some courts interpret Federal Rule of Bankruptcy Procedure 7001(g) to require an adversary proceeding to obtain equitable relief, such as an equitable servitude. *See In re Snow*, 201 B.R. at 977; *In re Chapelle*, No. 99-02287, 2000 WL 33529765, at *1–2 (Bankr. D.D.C. Apr. 3, 2000). In an adversary proceeding, the adversarial party files a complaint with the court. Fed. R. Bankr. P. 7003; Fed. R. Civ. P. 3. The adversarial party then serves the debtor with the complaint and a summons. Fed. R. Bankr. P. 7004.

Several bankruptcy courts have denied requests for *in rem* relief because of due process concerns when the property's co-owner is not before the court. For example, in *In re Amey*, the court declined to grant *in rem* relief as to a"sh co-owner's interest in a property because the secured lender did not commence adversary proceedings against the co-owner. 314 B.R. at 871. The court found that an adversary proceeding "is a more appropriate and certain way to insure that a nondebtor receives all the procedural protections that the bankruptcy rules and due process require"; it "prevents any resulting order from being subject to later attack as being procedurally defective, and [it] eliminates any issue about whether such an order is void for lack of personal jurisdiction." *Id.* The court stressed that *in rem* relief "is itself an extraordinary remedy," so a creditor must comply with the correct procedure. *Id.*; *see also In re Snow*, 201 B.R. at 976–77 (holding that a court lacked personal jurisdiction over co-owners and declining to bind them to *in rem* order because creditors did not show that the co-owners received notice of a hearing); *In re Chappelle*, 2000 WL 33529765, at *2 ("Although this court believes that it has the power to issue such in rem orders, the court believes that an adversary proceeding is necessary to accomplish such an order except with respect to the debtor's own interest in the property."); *Chase Manhattan Mortg. Corp. v. Gilkes (In re Gilkes)*, No. 03-20469-NVA, 2006 WL 5218624, at *4 (Bankr. D. Md. Jan. 31, 2006) (holding that an adversary proceeding was necessary to bind a non-debtor co-owner because she had never filed for bankruptcy and was "not accused of egregious conduct or abuse of the bankruptcy process").

When it is clear that a co-owner has been given notice and an opportunity to be heard, some bankruptcy courts have granted *in rem* relief even in the absence of an adversary proceeding. *See In re Roeben*, 294 B.R. at 848 (finding an adversary proceeding unnecessary when it was clear that a debtor and her spouse "acted in concert to abuse the automatic stay provisions of the Bankruptcy

Code," so her spouse would have "constructive notice"); *In re Fernandez*, 212 B.R. 361, 371 (Bankr. C.D. Cal. 1997) (finding that the debtor and co-owner acted in concert to interfere with foreclosure, so the debtor had constructive notice of *in rem* relief granted to the creditor in the co-owner's bankruptcy case).

The Creditors did not commence an adversary proceeding against Kelly. Kelly argues that "in the absence of a complaint and summons served on Ms. Kelly and Mr. Myers to afford them Constitutional due process[,] the bankruptcy court intentionally acted outside its subject matter jurisdiction by entering *in rem* orders . . . against entireties property owned by Ms. Kelly and Mr. Myers." ECF 29, at 18. But even if the bankruptcy court erred by not requiring an adversarial proceeding, any such error would be harmless. Kelly and Myers were given plenty of notice and an opportunity to be heard. *See McNeil*, 499 B.R. at 490 (holding that the absence of an adversary proceeding under Rule 7001 was harmless error because the bankruptcy court nevertheless provided the debtor due process).

Kelly and Myers received abundant notice that their properties could be subject to an equitable servitude. The Creditors' motions request an equitable servitude and prospective relief. *See* ECF 5-25, at 1; ECF 5-9 at 7. U.S. Bank's motion was served upon both Kelly and Myers. *See* ECF 5-25, at 6. U.S. Bank also served Kelly and Myers with a notice that a hearing had been scheduled on its motion and the date, time, and location of the hearing. *See* ECF 5-26, at 1–2. That notice instructed all interested parties to file a written response with the Clerk of the Bankruptcy Court explaining their positions and to mail a copy of the response to Kelly and Myers. *See id.* at 1. The court also sent Kelly and Myers its order scheduling the hearing. *See* ECF 4-13, at 4. In that order, the court explained that it would "consider whether to impose an equitable servitude with respect to any real property owned and/or occupied by [Kelly] for a period up to two (2) years

based on the Debtor's history of bankruptcy filings pursuant to 11 U.S.C. §§ 105(a) and 362(d)(4)." *Id.* at 3.

Kelly and Myers also had an opportunity to be heard. Myers attended the hearings on the Creditors' motions. Kelly chose not to attend. Myers believed the hearings were unnecessary because, in his view, Kelly had voluntarily dismissed her petition. *See* ECF 24-1, at 27:18–20 ("Well, then all due respect, I find the whole process silly since Ms. Kelly's dismissed this case."). The court later concluded that Kelly "did not attend the hearing because she believes she is entitled to the dismissal of this case based on her Notice of Voluntary Dismissal subject only to a 180-day bar to refiling pursuant to Section 109(g)." *In re Kelly*, 656 B.R. at 569. Kelly does not contest this characterization. She had an opportunity to be heard, and she opted out of it.

At the start of the July 10 hearing, the court found that its order gave "proper[] notice" of the potential equitable servitude to Kelly and Myers. ECF 24-1, at 21:19–22:4. The court explained that while Myers was present at the hearing, "[h]e is not here as a representative of Ms. Kelly. He's not here acting as her attorney. . . . [H]e has an interest in some if not all of the real estate that Ms. Kelly owns. . . . I'm going to allow him to be heard." *Id.* at 33:7–14. The court later stated to Myers, "[F]or purposes of this hearing, I'm giving all people claiming to be a party in interest an opportunity to be heard, including you, so we don't have to fight about whether you're a party in interest or not. The Court's going to give you an opportunity to be heard." *Id.* at 72:13–17. The court allowed Myers to make a preliminary statement, offer evidence, and deliver a closing argument. Myers was heard.

Thus, the bankruptcy court awarded more than ample process to Kelly and Myers before it granted prospective relief to the Creditors.

Kelly does not challenge the bankruptcy court's finding that an equitable servitude was necessary. Nor does she argue that the duration of the servitude was an abuse of discretion. As such, Kelly has waived those two grounds to appeal the equitable servitude. *See Davis v. California (In re Venoco, LLC)*, 706 F. Supp. 3d 464, 477 n.10 (D. Del. 2023) (finding an argument not presented by the trustee's opening brief waived).

But even if Kelly had challenged the bankruptcy court's imposition of the equitable servitude, such a challenge would have been meritless. To determine whether an equitable servitude is warranted, a bankruptcy court "considers the objective futility of any plan offered by the debtor in the current case, the number of bankruptcy filings affecting the property, the past and present efforts to prosecute these filings, and current status of the underlying debt." *In re Nelson*, 2006 WL 4671846, at *1. Each factor weighs strongly in favor of an equitable servitude. Kelly's plan was objectively futile. It proposed to pay $150.00 per month for a term of 36 months, for a total of $5,400.00 over the lifetime of the plan. But to be confirmable, the plan must pay all prepetition arrears owed. U.S. Bank claimed that Kelly owed prepetition arrears of $1,283,051.28, far greater than the $5,400.00 she proposed to pay. The bankruptcy court rightly determined that Kelly's plan was futile. Additionally, *nine* bankruptcy petitions affected the properties. Kelly filed five of those petitions. Each of those petitions were dismissed. The bankruptcy court dismissed Kelly's first petition because Kelly did not qualify as a Chapter 13 debtor—her debts exceeded the Chapter 13 debt limit. Kelly voluntarily dismissed the next two petitions. The bankruptcy court dismissed Kelly's fourth petition two days after she filed it because Kelly failed to file a list of her 20 largest unsecured creditors, as required by a local bankruptcy rule. Kelly has not fared much better in this case. Kelly filed this Chapter 13 petition, even though she does not qualify as a Chapter 13 debtor, and she attached only a creditor matrix. After the bankruptcy court ordered her

to file the required schedules, Kelly filed them. They were inadequate. The court found that Kelly "failed to use a modicum of due diligence – let alone reasonable due diligence – in completing her schedules." *In re Kelly*, 656 B.R. at 583. That finding is amply supported by the record. Kelly listed 41 of the 47 creditors on her schedules as having a claim of $1.00. Kelly did not attend the hearings on the Creditors' motions for relief. Kelly has not shown a serious effort to prosecute her filings for the purpose they were intended: to reorganize her debts and pay off her creditors. Finally, Kelly has not made a single payment on her U.S. Bank loan since February 2010. Each of Kelly and Myers's bankruptcy petitions "were filed on the eve of a foreclosure sale or soon after a state court entered an order permitting a foreclosure proceeding to continue." *Id.* at 599. Those petitions have canceled all of the Creditors' scheduled foreclosure sales. The Creditors have been in limbo for 15 years.

The bankruptcy court found that "the relief imposed"—the equitable servitude—"and the time period are necessary to fulfill [the bankruptcy court's] duty to creditors and parties in interest in [Kelly's] bankruptcy case." *Id.* at 610. Absent an equitable servitude, Kelly and Myers will continue to manipulate the bankruptcy system to prevent the foreclosure of the properties and harm their innocent creditors. The bankruptcy court did not abuse its discretion in imposing a four-year equitable servitude on Kelly's properties.

## IV. Conclusion

For the reasons above, this Court affirms the decision of the bankruptcy court. A separate order follows.

Date: March 31, 2025

Deborah L. Boardman
United States District Judge